BESSIE M. TAGGART et al., Appellees, v. ELLA M. BURGIN, Appellant.

DEEDS: Validity—Mental Incapacity — Evidence. E v i d e n c e re-
1   viewed, and held to sustain finding that grantor, at the time of
executing deeds to his wife, was of unsound mind, and incapable
of comprehending the nature and effect of the conveyances exe-
cuted.

APPEAL AND ERROR: Review—Questions of Fact — Conflicting
2   Evidence. Weight must always be given, on appeal from decree
canceling conveyance on ground of mental incapacity, to the
findings of the lower court, on conflicting evidence.

*Appeal from Clay District Court.—D. F. COYLE, Judge.*

MARCH 24, 1919.

DEFENDANT appeals from a decree in the court below
canceling and setting aside certain real estate conveyances.
—*Affirmed.*

*Buck & Kirkpatrick, Francis & Owen,* and *Cosson
& Francis,* for appellant.

*Heald & Cook,* and *E. A. & W. H. Morling,* for appel-
lees.

STEVENS, J.—On April 16, 1908, L. C. Burgin, by sepa-
rate instruments conveyed certain real estate in Clay Coun-
ty, Iowa, and certain other real estate situated in Hutchin-
son County, South Dakota, to Ella M. Bur-
1. DEEDS: validity: gin, his wife. The consideration recited in
mental incapac-
ity: evidence.    each of said deeds is love and affection.
Plaintiffs are the daughters of the parties
to the above-mentioned instruments, and the sole heirs at
law of the grantor. They allege in their petition that the
grantor, at the time of the execution of said deeds, was of
unsound mind, and incompetent to transact business. This
presents the only question for decision.

The evidence is somewhat voluminous, and is, as usual in cases of this character, conflicting. We shall not undertake to review the evidence in detail, or make an extended statement thereof. The record does not reveal the age of L. C. Burgin, but we assume, from the fact that he was a soldier in the Civil War, that he must have been advanced in years.

On May 29th following the date of the above-mentioned deeds, an information was filed before the commissioners of insanity, alleging that Mr. Burgin was insane; and, on July 23d following, the grantee in said deeds subscribed and swore to a petition, filed in the district court of Clay County, alleging that her husband was of unsound mind, and praying the appointment of a guardian. Upon hearing before the commissioners, Mr. Burgin was found insane, and ordered confined in the hospital at Cherokee, to which institution he was taken, and where he remained until his death, on December 15, 1915. On August 27, 1908, an order was entered by the court, appointing defendant guardian of her husband. Many residents of Clay County who had known Mr. Burgin with varying degrees of intimacy for many years were called as witnesses, and testified to many changes in his personal appearance and habits, and expressed the opinion that he was not of sound mind. He does not appear to have been a man of eccentric habits; and changes in his appearance, conversation, and conduct appear to have been noticed by his friends for some time before the execution of the deeds. He formed impractical plans for accumulating wealth, became visionary, and, instead of manifesting characteristic cleanliness of his person and attire, became untidy, neglectful, and careless of his clothing and personal appearance; while his habits in other respects underwent a marked change. He had formerly been a regular attendant and officer of the church,

but became neglectful and indifferent thereto, failed to recognize those with whom he was acquainted, ceased his attendance at the Army Post and refused to pay his dues, and, upon one occasion, picked up and concealed two neckties from a store, and was seen to do indecent acts in daylight on the public streets. Some improvident business transactions were shown. All this was contrary to his former habits. He appears to have sustained friendly relations with his daughters, but conveyed all his property to his wife.

Medical witnesses. testifying as experts, expressed the opinion that he was of unsound mind, and that he was suffering from senile dementia. The superintendent, and one of the assistant physicians of the Cherokee Hospital for the Insane, where Mr. Burgin was confined, testified that he was afflicted with paresis, a disease which, they stated, is of syphilitic origin, and affects the patient both physically and mentally. They testified, however, that persons suffering from paresis frequently have lucid intervals, during which they may be capable of intelligently transacting business. Both senile dementia and paresis are progressive in character, and the mind of the patient gradually weakens. The attorney who prepared the deeds testified on behalf of the defendant, and expressed the opinion that Mr. Burgin, at the time the deeds were executed, was of sound mind, and gave him the necessary information for the preparation of the instruments without memoranda or other assistance. We are persuaded, however, that the weight of the evidence sustains the finding and decree of the court below that, at the time the instruments were executed, the grantor was of unsound mind and incapable of intelligently comprehending and understanding the nature and effect of the conveyances executed by him. Weight must always be given

to the finding of the lower court in cases

2. APPEAL AND ERROR: review: questions of fact: conflicting evidence.

of this character. It will serve no good purpose to extend this opinion by reciting or discussing the evidence in detail. Suffice it to say that, in our opinion, the right conclusion was reached by the court below, and its decree is, therefore,—*Affirmed.*

LADD, C. J., GAYNOR and PRESTON, JJ., concur.